# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| **Inca Boot Company, LLC,**[1] | § § | Case No. 25-11382-smr |
|    d/b/a Fortress Shoes, | § | |
|    f/d/b/a Fortress of Inca, | § | Chapter 11, Subchapter V |
|             **Debtor.** | § § | |

## SUBCHAPTER V DEBTOR'S PLAN DATED DECEMBER 3, 2025

This is the plan of reorganization in the chapter 11, subchapter V case of Inca Boot Company, LLC (the "Debtor"). You are encouraged to carefully review the full text of this document, including all exhibits and attachments, before deciding how to vote on the Plan. You may wish to consult an attorney about your rights and your treatment under the Plan.

### Nonstandard Provisions

☒ **If this box is checked, the Plan contains nonstandard provisions in Article 6.**

### Summary of the Plan and Distributions to Creditors

The Debtor will use future revenue from its normal business operations to fund this three-year plan, which will pay:

- administrative expenses of the Debtor's counsel and the subchapter V trustee;
- the present value of the secured portion of the U.S. Small Business Administration's claim; and
- unsecured claims (including secured creditors' deficiency claims) from projected disposable income.

---

[1] The Debtor's federal Employer Identification Number (EIN) is 27-2552155.

# ARTICLE 1
## Relevant Background and Financial Information for Debtor

☐ **If this box is checked, this Article is impacted by a nonstandard provision. Please review Article 6 of the Plan for further details.**

### 1.1 Nature of the Debtor's Business

The Debtor is an e-commerce business headquartered in Austin, Texas, that sells high-quality handcrafted footwear made by family-owned and operated workshops and factories in Peru.

### 1.2 History of Business Operations of the Debtor

Evan Streusand founded the Debtor in 2010 after returning from a backpacking trip through South America, where he purchased a pair of boots from a shoemaker in Cusco, Peru. Impressed with the quality of the materials and craftsmanship, the Debtor began working with the Peruvian shoemakers to bring handcrafted footwear to the United States while always taking care to ensure safe working conditions and fair wages.

### 1.3 Legal Structure and Ownership

The Debtor is a Texas limited liability company, whose members own percentage interests: Evan Streusand (45%); Steven Yambra (35%); and Dory Benami (20%).

### 1.4 Events Leading to the Filing of the Bankruptcy Case

The Debtor started by selling wholesale to other retailers, which led to increased exposure and brand awareness but also required the Debtor to advance large payments to its manufacturers. To fund its wholesale operations, which included hundreds of retailers around the country, the Debtor began taking on debt to cover costs. While the Debtor has since moved to a predominately e-commerce model, the original debts were never fully resolved and over time replaced by additional debt.

### 1.5 Filing of the Debtor's Chapter 11 Case

On September 4, 2025, the Debtor filed its voluntary petition for relief under Chapter 11, Subchapter V. The Debtor's schedules of assets and liabilities and statement of financial affairs are available at docket number 1.

**1.6  Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as **Exhibit A**.

**1.7  Feasibility Analysis**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Debtor has provided projected financial information as **Exhibit B**. Based on the plan projections, the Debtor's monthly disposable income, as that term is defined by 11 U.S.C. § 1191(d), to be committed to the payment of claims for the period described in 11 U.S.C. § 1191(c)(2) is $31,839.12.

**1.8  Avoidable Transfers**

The Debtor does not intend to pursue preference, fraudulent conveyance, or other avoidance actions.

ARTICLE 2
The Plan

☒ **If this box is checked, this Article is impacted by a nonstandard provision. Please review Article 6 of the Plan for further details.**

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code proposes to pay creditors of the Debtor from future income. Treatment of Creditors' claims is determined by which class such claim belongs to. Claims have been classified below in accordance with section 1122 of the Code.

Only Creditors in classes that are impaired may vote on whether to accept or reject the Plan, and only Creditors holding Allowed Claims may vote. A class accepts the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the Allowed Claims that actually vote, vote in favor of the Plan. Also, a class of Equity Interest holders accepts the Plan when at least two-thirds (2/3) in amount of the allowed Equity Interest holders that actually vote, vote in favor of the Plan.

A class that is not impaired is deemed to accept the Plan.

**2.1** **Unclassified Claims**

Certain types of Claims are automatically entitled to specific treatment under the Code. For example, Administrative Expenses and Priority Tax Claims are not classified. They are not considered impaired, and holders of such Claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan does not place the following Claims in any class:

**A. Administrative Expenses**

The Debtor must pay all Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Confirmation Date must be paid in accordance with this Plan, or upon such other terms as agreed upon by the Debtor and the Administrative Claimant or court order. If the Administrative Expense is disputed, payment will be made after the Administrative Expense is allowed by the Bankruptcy Court.

The following chart lists the Debtor's estimated Administrative Expenses and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Administrative Tax Claim | $0.00 | |
| Debtor's counsel fees and expenses | $25,000.00 | Upon application and final approval by the Bankruptcy Court, to be paid in five monthly post-confirmation installments (or upon such other terms as agreed upon by the Debtor and Debtor's counsel) |
| Subchapter V Trustee | $6,000.00 | Upon application and final approval by the Bankruptcy Court, to be paid from post-petition retainer payments (and, if necessary, continued monthly post-confirmation payments of up to $1,500.00) |
| Other Administrative Claim | $0.00 | |
| **TOTAL** | **$31,000.00** | |

4

### B. Priority Tax Claims

Priority Tax Claims are unsecured income, employment, and other taxes described by 11 U.S.C. § 507(a)(8). Unless the holder of such a § 507(a)(8) Priority Tax Claim agrees otherwise, it must receive the present value of such Claim, in regular installments paid over a period not exceeding five years from the order of relief.

Each holder of a Priority Tax Claim will be paid as set forth in the chart below:

| Name of Taxing Authority and Type of Tax | Estimated Amount Owed | Date of Assessment | Treatment |
|---|---|---|---|
| none | $0.00 | | The Debtor will continue to pay income, employment, and other taxes in the ordinary course of business. |

### 2.2 Classes of Claims and Equity Interests

The following are the classes of claims set forth in the Plan and the proposed treatment that they will receive under the Plan:

### A. Classes of Secured Claims

Allowed Secured Claims are Claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured Claims under 11 U.S.C. § 506. If the value of the collateral or setoffs securing the Creditor's Claim is less than the amount of the Creditor's Allowed Claim, the deficiency will be classified as a general unsecured Claim. In addition, certain claims secured only by the Debtor's principal residence, may require different treatment pursuant to 11 U.S.C. § 1190(3) as set forth below, if applicable.

The following chart lists all classes containing the Debtor's secured prepetition Claims and their proposed treatment under the Plan:

| Class # | Description | Insider? | Impairment | Treatment |
|---|---|---|---|---|
| 1 | *Secured claim of*: U.S. Small Business Administration<br><br>Collateral description: all tangible and intangible personal property<br><br>Allowed Secured Amount: $31,873.81 | No | impaired | Allowed Secured Claim will be paid in full, with interest of 3.75% per annum, paid in monthly installments of $583.42, beginning on the first business day of the first month after the occurrence of the Effective Date and continuing on the first business day of each month for sixty months<br><br>Deficiency in the amount of $122,758.40 to be classified and treated as a general unsecured Claim |

### B. Classes of Priority Unsecured Claims

Certain priority Claims that are referred to in 11 U.S.C. §§ 507(a)(1), (4), (5), (6), and (7) are required to be placed in classes. The Code requires that each holder of such a Claim receives cash on the Effective Date of the Plan equal to the allowed amount of such Claim. However, a class of holders of such Claims may vote to accept different treatment.

The following chart lists all classes containing Claims under 11 U.S.C. §§ 507(a)(1), (4), (5), (6), and (a)(7) and their proposed treatment under the Plan:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| n/a | | | |

### C. Class of General Unsecured Claims

General Unsecured Claims are not secured by property of the estate and are not entitled to priority under 11 U.S.C. § 507(a). A table of all claims, their estimated

6

amounts, whether the claim is allowed or disputed, and their anticipated distribution under the Plan is attached hereto as **Exhibit C**.

The following chart identifies the Plan's proposed treatment of General Unsecured Claims against the Debtor:

| Class # | Description | Impairment | Treatment |
|---|---|---|---|
| 2 | General Unsecured Claims | impaired | Allowed General Unsecured Claims will be paid six semi-annual pro rata payments beginning on the last business day of the sixth month after the occurrence of the Effective Date and on the last business day of each subsequent six-month period.<br><br>The Debtor's business is cyclical, and the first half of each year historically underperforms the second half. Accordingly, the Debtor does not project any disposable income for the first half of each year. In an effort to provide regular distributions to General Unsecured Claims, each semi-annual payment will reflect half of the Debtor's projected disposable income for the full year (rather than for just that six-month period). |

**D. Class of Equity Interest Holders**

Equity Interest holders are parties who hold an ownership interest (*i.e.*, equity interest) in the Debtor. The Debtor is a limited liability company, and the Equity Interest holders are the members.

The following chart sets forth the Plan's proposed treatment of the class[es] of Equity Interest holders:

| Class # | Names & Description | Impairment | Treatment |
|---|---|---|---|
| 3 | Evan Streusand (45%); Steven Yambra (35%); and Dory Benami (20%) | unimpaired | Equity interests will be retained by existing holders |

7

**2.3** **Claims Allowance Process**

Any Claim detailed on the Debtor's schedules for which the Debtor did not select disputed, unliquidated, or contingent is deemed an allowed claim under this Plan. For all other Claims, the Claimant must file a Proof of Claim by the Bar Date in order to receive a distribution under the Plan.

The Debtor may object to the amount or validity of any Claim within sixty days of the Confirmation Date by filing an objection with the Bankruptcy Court and serving a copy of the objection on the holder of the Claim. The Claim objected to will be treated as a Disputed Claim under the Plan.

No partial distributions will be made with respect to a Disputed Claim until the resolution of such dispute by settlement or Final Order. The provisions of this section are not intended to restrict payment of any Allowed Claims which are not disputed. Until a Disputed Claim is resolved, payment distributions to claimants holding disputed claims will be retained by the Disbursing Agent subject to a final resolution of the Disputed Claim. Upon resolution in favor of the Allowed Claim the Disbursing Agent will distribute withheld funds within the next payment period. If the Disputed Claim is disallowed, the Disbursing Agent will make withheld funds available to allowed claim holders within the next payment period in accordance with this Plan.

**2.4** **Treatment of Executory Contracts and Unexpired Leases**

The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the Effective Date: n/a

Except for the executory contracts and unexpired leases that have been assumed, and if applicable assigned, herein, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

**A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty days after the date of the order confirming this Plan.**

Any claim based on the rejection of an executory contract or unexpired lease under this section will be barred if the proof of claim is not timely filed unless the Bankruptcy Court orders otherwise.

8

**2.5  Means for Implementation of the Plan**

The Debtor will continue to operate in the ordinary course and use revenue generated to make disbursements under the Plan on a monthly basis (to the U.S. Small Business Administration) and on a semi-annual basis (to General Unsecured Creditors).

The Board of Directors of the Debtor immediately prior to the Effective Date shall serve as the initial Board of Directors of the Reorganized Debtor on and after the Effective Date. Each member of the Board of Directors shall serve in accordance with applicable non-bankruptcy law and the Debtor's certificate or articles of incorporation and bylaws, as each of the same may be amended from time to time.

**2.6  Payments by Disbursing Agent**

If the Plan is confirmed under 11 U.S.C. §1191(a), payments to Creditors provided for in the Plan will be made by the Debtor.

**If the Plan is confirmed under 11 U.S.C. § 1191(b), the Debtor proposes that the Debtor act as the Disbursing Agent. There is cause to have the Debtor serve as the Disbursing Agent, instead of the Subchapter V Trustee, because (a) the Debtor has no history or allegation of business impropriety, (b) the Debtor is capable of acting as the Disbursing Agent, and (c) the administrative cost of having the Subchapter V Trustee serve as the Disbursing Agent will reduce recovery to unsecured creditors.**

**2.7  Post-Confirmation Management**

The Post-Confirmation Officers/Managers of the Debtor, and their compensation, shall be as follows:

| Name | Position | Compensation |
| --- | --- | --- |
| Evan Streusand | President | 2026: $5,600.00/month <br> 2027: $5,768.00/month <br> 2028: $5,941.04/month |
| Steven Yambra | Secretary | n/a |

**2.8  Tax Consequences of the Plan**

*Creditors and Equity Interest Holders Concerned with How the Plan May Affect Their Tax Liability Should Consult with Their Own Accountants, Attorneys, and/or Advisors.*

The Debtor does not anticipate any tax consequences from the Plan. Creditors receiving distributions under the Plan or whose claims are discharged under the Plan should consult with their own accountants, attorneys, and/or advisors regarding potential tax consequences.

## ARTICLE 3
## Discharge

Discharge. **If the Plan is confirmed under 11 U.S.C. § 1191(a)**, on the Confirmation Date of this Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the Effective Date, to the extent specified in 11 U.S.C. § 1141(d) of the Bankruptcy Code; or

**If the Plan is confirmed under 11 U.S.C. § 1191(b)**, as soon as practicable after completion by the Debtor of all payments due under the Plan, unless the court approves a written waiver of discharge executed by the Debtor after the order for relief under this chapter, the court shall grant the Debtor a discharge of all debts provided in section 1141(d)(1)(A) of this title, and all other debts allowed under section 503 of this title and provided for in this Plan, except any debt—

(1) on which the last payment is due after the first 3 years of the plan, or such other time not to exceed 5 years fixed by the court; or

(2) if applicable, of the kind specified in section 523(a) of this title.

## ARTICLE 4
## General Provisions

☐ **If this box is checked, this Article is impacted by a nonstandard provision. Please review Article 6 of the Plan for further details.**

### 4.1 Vesting of Property of the Estate

If a plan is confirmed under 11 U.S.C. § 1191(a), except as otherwise provided in the Plan or in the order confirming the Plan, (i) confirmation of the Plan vests all of the property of the estate in the Debtor, and (ii) after confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Equity Interests of Creditors, equity security holders, and of general partners in the Debtor.

If a plan is confirmed under 11 U.S.C. § 1191(b), property of the estate includes, in addition to the property specified in § 541, all property of the kind specified in that section that the Debtor acquires, as well as earnings from services performed by the

Debtor, after the date of commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 12, or 13 of the Bankruptcy Code, whichever occurs first. Except as provided in 11 U.S.C. § 1185 of the Bankruptcy Code, the Plan, or the order confirming the Plan, the Debtor shall remain in possession of all property of the estate.

**4.2** **Binding Effect**

If the Plan is confirmed, the provisions of the Plan will bind the Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

**4.3** **Severability**

If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**4.4** **Retention of Jurisdiction by the Bankruptcy Court**

The Bankruptcy Court shall retain jurisdiction of this case with regard to the following matters:

(i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan;

(ii) to rule on any modification of the Plan proposed under 11 U.S.C. § 1193;

(iii) to hear and allow all applications for compensation to professionals and other Administrative Expenses and enter final orders;

(iv) to resolve all issues regarding Claims objections, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and

(v) to adjudicate any cause of action which may exist in favor of the Debtor, including preference and fraudulent transfer causes of action.

**4.5** <u>**Captions**</u>

The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

## ARTICLE 5
## Definitions

The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan and they are supplemented by the following definitions:

"**Bar Date**" means the deadline for filing a proof of claim, which is November 13, 2025, for parties other than governmental units, and March 3, 2026, for claims of governmental units.

"**Confirmation Date**" shall be the date on which the Bankruptcy Court enters the Confirmation Order.

"**Confirmation Order**" shall be the order confirming this Plan pursuant to section 1191 of the Bankruptcy Code.

"**Effective Date**" shall be the first business day that is at least fifteen (15) days after the Confirmation Date, unless the Confirmation Order is stayed, in which case it shall be the first business day following the lifting, dissolution, or removal of such stay that is at least fifteen (15) days after the Confirmation Date.

## ARTICLE 6
## Nonstandard Provisions

The following nonstandard provisions shall be applicable to the Plan:

### 6.1 Default and Cure

If the Debtor fails to make any payment or distribution when due under the Plan, the affected Creditor may provide written notice of default to the following:

| Debtor's Counsel | Subchapter V Trustee |
|---|---|
| An Nguyen | Michael G. Colvard |
| NGUYEN LAW, PLLC | Martin & Drought, P.C. |
| P.O. Box 150146 | Weston Centre |
| Austin, TX 78715-0146 | 112 E Pecan St, Ste 1616 |
| an@anwinlaw.com | San Antonio, Texas 78205 |
|  | mcolvard@mdtlaw.com |

The Debtor shall have ten (10) business days after receipt of such notice to cure the default. If the default is not cured within such period, the Creditor may (a) seek enforcement of the Plan through motion to the Court; and (b) exercise any rights available under applicable law with respect to any collateral securing the claim, subject to the provisions of the Bankruptcy Code and this Plan.

### 6.2 Temporary Injunction

Any holder of an allowed Claim against the Debtor shall be temporarily enjoined from commencing, continuing, or otherwise enforcing any action, suit, or proceeding against the Debtor or any non-Debtor guarantor solely on account of such guarantor's liability during the period that the Debtor is current on all distributions required under the Plan. The injunction shall terminate automatically (a) if the Debtor fails to make a payment required under the Plan for more than ten (10) business days after notice of such default is provided; (b) after completion by the Debtor of all payments due under the Plan; or (c) the Plan is otherwise modified or terminated by order of the Bankruptcy Court.

### 6.3 Post-Confirmation Reporting for Nonconsensual Plan

If the Plan is confirmed under 11 U.S.C. § 1191(b) and the Debtor acts as the Disbursing Agent, the Debtor will provide quarterly reporting to the Subchapter V Trustee to provide status of the Debtor's operations and ensure Plan compliance. Such reporting will summarize the Debtor's gross income, expenses, and actual disposable income and payments made to Creditors under the Plan. The Debtor will also provide written notice to the Subchapter V Trustee of any significant after-acquired property within thirty days of acquiring such property.

**6.4** **Post-Confirmation Fees and Expenses for Subchapter V Trustee for Nonconsensual Plan**

If the Plan is confirmed under 11 U.S.C. § 1191(b), the Subchapter V Trustee may file with the Bankruptcy Court a quarterly notice of post-confirmation fees and expenses related to services under the confirmed plan. If no objection is filed within fourteen (14) days of the filing of the fee notice, the Debtor shall promptly pay the balance due to the Subchapter V Trustee.

Respectfully submitted,

By: */s/ Evan Streusand*
Evan Streusand, President
Inca Boot Company, LLC
Debtor

By: */s/ An Nguyen*
An Nguyen
Nguyen Law, PLLC
Counsel for Debtor