UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| INCA BOOT COMPANY, LLC | § | CASE NO. 25-11382-SMR |
| | § | |
| DEBTOR. | § | CHAPTER 11 (SUBCHAPTER V) |

**SUB V TRUSTEE'S REPORT REGARDING
DEBTOR'S PLAN DATED DECEMBER 3, 2025 [ECF NO. 46]**

TO THE HONORABLE SHAD M. ROBINSON,
UNITED STATES BANKRUPTCY JUDGE:

Now comes Michael G. Colvard, Sub Chapter V Trustee (herein "Sub V Trustee") within the Inca Boot Company, LLC d/b/a Fortress Shoes f/d/b/a Fortress of Inca (herein "Inca Boot" and/or "Debtor") Small Business Chapter 11 case, to file this the Sub V Trustee's Report Regarding the Subchapter V Debtor's Plan Dated December 3, 2025 [ECF No. 46] (the "Plan"), and would show unto the Court as follows:

## I. BACKGROUND

1.1 Inca Boot filed a Chapter 11 small business case on September 4, 2025 [ECF No. 1]. Sub V Trustee was appointed on September 9, 2025 [ECF No. 11].

1.2 Debtor filed its Plan on December 3, 2025 [ECF No. 46]. The Order Setting Deadlines Pursuant to Rule 3017.2 was entered December 10, 2025 [ECF No. 48], setting Confirmation Hearing for January 29, 2026, at 10:00 a.m.

1.3 The Plan provides for treatment of Debtors' creditors, within three distinct classes including:

    1) <u>Class 1</u> – Secured Claim of U.S. Small Business Administration – allowed secured amount of $31,873.81 – to be paid in 60 monthly payments of $538.42

at 3.75% per annum. Deficiency in the amount of $122,758.40 to be classified and treated as a general unsecured claim.

2) <u>Class 2</u> – General Unsecured Claims – to be paid in six semi-annual pro rata payments.

3) <u>Class 3</u> – Equity Interests – shall be retained by existing holders.

1.4 The Plan references a Liquidation Analysis attached as Exhibit A – showing assets of having a net value of $42,349.70 and secured and admin claims of $66,873.81, leaving nothing for unsecureds upon liquidation.

1.5 The Plan attaches financial projections attached as Exhibit B –showing projected disposable income in year one of $0.00; $6,577.33 in year two; $0.00 in year 3; $0.00 in year 4; and, and $11,262.01 in year 5 – totaling $31,839.12 to unsecured claimants following payments of secured, priority and administrative claims resulting in an approximate 5% distribution to unsecured creditors having claims approximating $663,593.34.

1.6 The Plan provides for payments of administrative claims under ¶ 2.1.A – to be paid upon application and final approval by the Bankruptcy Court, to be paid in monthly payments.

1.7 Debtor filed its Monthly Operating Reports ("MORs") within the SubChapter V case, showing:

i. September 2025 MOR [ECF No. 38]
   Cash receipts - $53,199.73
   Net cash flow - $-1,320.91

ii. October 2025 MOR [ECF No. 45]
    Cash receipts - $66,697.37
    Net cash flow - $9,841.33

iii. November 2025 MOR [ECF No. 53]
     Cash receipts - $55,160.04
     Net cash flow - $6,630.36

Inca Boot's total post-petition cash receipts for September-November amounts to $175,057.14, averaging $58,352.38 per month – with post-petition net cash flow for September-November totaling $15,150.78, and averaging $5,050.26 per month. A review of Debtors pre-petition operations evidenced by Debtor's cash flow statement showing $675,000.00 in total sales from January 1, 2025 – September 4, 2025 [ECF No. 1-4] - shows $699,900.00 in gross revenue and $60,600.00 in net cash flow. Debtor's projected gross revenue for February 26-July 26 is $325,164.38 – significantly lower than annualized post-petition monthly gross revenues (with expenses) before Plan payments of $293,332.00 for February 2026 - July 2029 – projecting in $31,832.00 in net income over the 5 year Plan term. Plan payments of $5,305.13 in net monthly income prior to secured, priority and administrative payments, is roughly equivalent to average post-petition monthly net income of $5,050.26. Debtor's cash collateral budget fixes $148,180.00 in expenses for months September 2025 – January 2026, averaging $29,036.00 per month – compared to Plan projected monthly expenses of $48,884.62.

1.9  Six claims have been filed totaling $354,368.48, of which $113,026.14 is secured. Debtor's Schedules list numerous unsecured claims of $320,398.51 – with no claims scheduled as disputed, unliquidated or contingent, those scheduled claims are "deemed allowed" under R. 3003(b)(1) FED. R. BANKR. P. without filing a Proof of Claim – to the extent such claims are not designated as disputed, contingent or unliquidated.

1.10  Article 2 of the Plan indicates how the Plan is to be implemented, indicating that Debtors will continue operations and payments from revenue generated by future business operations on a monthly basis to SBA and semi-annual basis to General Unsecured Creditors (Plan, Article 2, p. 9 ¶ 2.5). Also, indicating at ¶ 2.6 that Debtor will be the disbursing agent.

1.11    Paragraph 4.1 of the Plan indicates that on the Effective Date all property of the estate will be transferred to the Reorganized Debtor, free and clear of all claims if the Plan is confirmed under § 1191(a); and, that Debtor's property will remain property of the estate if the Plan is confirmed under § 1191(b).

## II.    ARGUMENT/ AUTHORITY

2.1    BANKRUPTCY CODE § 1191(a) provides that the court shall confirm a plan only if all the requirements under § 1129(a), other than paragraph (15) of § 1129 are met.  Because § 1129(a)(15) no longer applies, individual debtors are not specifically required to file post-confirmation monthly reports in a Subchapter V case to the U.S. Trustee's Office.  Further, § 1129(a)(8) and (10) are not applicable.  Consequently, if all other § 1129(a) requirements are met including acceptance by all impaired classes under § 1129(a), the court is required to confirm a consensual plan.

2.2    BANKRUPTCY CODE § 1191(c) specifies that the provisions of a plan are to be fair and equitable, with respect to each class of claims, and includes the requirement that the plan provide for all projected "disposable income" received by the Debtor to be applied to make payments under the plan. Compliance with the projected disposable income requirement (or "best efforts") is a mandatory condition for cramdown confirmation under § 1191(b).  A GUIDE TO SMALL BUSINESS REORGANIZATION ACT OF 2019, p. 55, n. 205, Paul W. Bonapfel, U.S. Bankruptcy Judge, N.D. Ga., February 2020.

2.3    BANKRUPTCY CODE § 1191(d) specifies that the term "disposable income" means income received by the debtor which is not reasonably necessary to be expended for: (A) maintenance, support of the debtor or dependent; (B) a domestic support obligation; or (C) for payment of expenditures necessary for continuation, preservation, or operation of the debtor's

business. To the extent disposable income is available – all such disposable income after deducting necessary business operation expenses is to be used to pay creditors. Debtor must allocate all disposable income to a "cramdown" plan under § 1191(b).

2.4 Under BANKRUPTCY Code § 502, a claim or interest filed under Section 501 is deemed allowed. Under R. 3002(a) FED. R. BANK. P. a creditor must file a claim to be allowed except as provided in Rules 1019(3), 3003, 3004 and 3005. Under R. 3003(c) a creditor whose claim is not listed or who is scheduled as disputed, contingent or unliquidated must file a proof of claim. All Debtor's scheduled claims are designated non-contingent, liquidated and undisputed other than the two personal injury claims.

2.5 Sub V Trustee's limited objections to the Plan are:

i. <u>Projections:</u> The Plan anticipates continued operations and payment of allowed creditor claims from the net disposable income of Debtor. Post-petition cash receipts for September-November amounts to $175,057.14, averaging $58,352.38 per month or annualized of $699,900.00 – with post-petition net cash flow for September-November totaling $15,150.78, and averaging $5,050.26 per month. Debtor's projected gross revenue for February 26-July 26 is $325,164.38. Debtor should explain why projected gross revenue under the Plan projections reveal amounts substantially lower than annualized post-petition gross revenue of $650,284.00, and why projections for gross revenue do not equal post-petition performance evidenced by Debtor's MORs and within Debtor's prepetition operations.

ii. <u>Expenses:</u> Debtor's Projections provide for $293.332.00 in expenses for February – July 2026 or averaging $48,888.62 per month. Debtors cash

        collateral budget allowed only $29,036.00 per month in post-petition expenses, and MORs revealing average post-petition disbursement of $43,202.00. Debtor should explain why projected expenses are $5,686.00 more than post-petition average monthly expenses and almost more than $20,000.00 above cash collateral budget allowance.

  iii.    <u>Disposable Income:</u> Debtor's Plan provides negative projected disposable income within periods of February-July 2027 and February-July 2028. Debtor should explain why projections for those periods result in no disposable income for unsecured creditors within those periods, and other evidence establishing seasonable variances in support of Plan projections.

  iv.    <u>Distribution Agent</u>: The Plan proposes that Debtor is to be Distribution Agent. Sub V Trustee has no objection to Debtor making distributions and acting as Distribution Agent provided however that Debtor comply with local Sub V rules requiring periodic post-petition reporting to enable Sub V Trustee to monitor Debtor's Plan payments in the event the Plan is confirmed as a non-consensual plan under § 1191(b).

## PRAYER

WHEREFORE PREMISES CONSIDERED, Sub V Trustee prays that the Court confirm the Plan, subject to a review Sub V Trustee's limited objections, and for such other relief at law and equity to which he may be justly entitled.

Respectfully Submitted,

**MARTIN & DROUGHT, P.C.**
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

By: /s/Michael G. Colvard
    Michael G. Colvard
    State Bar No. 04629200

**SUBCHAPTER V TRUSTEE**

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 16, 2026, a true and correct copy of the foregoing document was served on the parties listed on the attached service list via First Class Postage Pre-Paid Regular U.S. Mail.

    /s/ Michael G. Colvard
    Michael G. Colvard